FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 04, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMIAH LINZ and AARON KAMINSKY, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>    vs.<br><br>CORE VALUES ROADSIDE SERVICE, LLC, and MARK HYNDMAN,<br><br>             Defendants. | No. 2:20-CV-00107-SMJ<br><br>REPORT AND RECOMMENDATION TO GRANT IN PART, AND DENY IN PART PLAINTIFF LINZ'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM<br><br><br>**ECF No. 74** |

    Before the Court on report and recommendation is Plaintiff Jeremiah Linz's

Motion to Dismiss Defendants' Counterclaim with Prejudice, ECF No. 74,

pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* ECF No. 77 (Order

Referring Motion).  The undersigned has reviewed the motion and the record

herein, and is fully informed.  For the reasons set forth below, the undersigned

recommends the motion be granted in part and that Defendants' counterclaim be

dismissed without prejudice.

REPORT AND RECOMMENDATION - 1

## PROCEDURAL HISTORY

On July 2, 2019, Plaintiff Jeremiah Linz and two other named co-Plaintiffs filed a complaint in the Southern District of Ohio against Core Values Roadside Service LLC ("Core Values"), a company based in Spokane, Washington, and Defendant Mark Hyndman, Core Values' managing member.  ECF No. 1; *see also* ECF No. 15-2 (Decl. of Mark Hyndman).  The initial Complaint, ECF No. 1, as well as the currently operative pleading, the First Amended Complaint (FAC), ECF No. 67, claim Defendants intentionally misclassified Plaintiffs, and other similarly situated roadside assistance technicians, as independent contractors rather than employees.  ECF No. 67 at 2.  Plaintiffs assert a putative collective action under the Fair Labor Standards Act (FLSA) (for failure to pay minimum wage and overtime), and a putative class action for violations of Ohio and Pennsylvania state wage laws, as well as for unjust enrichment.  ECF No. 67 at 16-20.

Defendants filed a joint answer denying they had violated the law and alleging several affirmative defenses, including failure to state a claim, good faith, damages due to Plaintiffs' own acts or omissions, fault of a nonparty, and failure to mitigate.  ECF No. 14.  Core Values alleges that it does not itself provide the roadside assistance services to clients; it enters into "Independent Service Provider Agreements" with purported independent contractors who are contracted to provide the services.  ECF No. 14 at 3.

REPORT AND RECOMMENDATION - 2

1    While the matter was pending in the Southern District of Ohio, Defendants

2    moved to enforce a forum selection clause in the agreements signed by Plaintiffs

3    and to transfer the case to the Eastern District of Washington.  ECF No. 15.  On

4    March 18, 2020, the court granted Defendants' motion, and transferred the case.

5    ECF Nos. 28, 29.  On June 8, 2020, this Court granted preliminary certification of

6    Plaintiffs' FLSA claims as a collective action.  ECF No. 46.

7    On June 15, 2020, Defendants amended their Answer, adding two

8    counterclaims against only Plaintiff Linz, which (1) assert breach of contract on the

9    grounds Plaintiff Linz filed suit and contested transfer in violation of the forum

10   selection clause; and (2) sought indemnification pursuant to contract on the theory

11   that Plaintiff Linz is a co-employer and joint tortfeasor.  ECF No. 48 at 11-15.

12   On July 2, 2020, Plaintiff Linz moved to dismiss Defendants' counterclaims

13   pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively, Rule 56.

14   ECF No. 54.  On the same day, Plaintiffs sought leave to amend the Complaint to

15   remove Cory Davis as one of the named co-Plaintiffs.  ECF No. 56.  On July 23,

16   2020, Defendants filed an opposition to Plaintiff Linz's motion to dismiss.  ECF

17   No. 65.  Prior to the deadline for the reply brief in support of the motion to dismiss,

18   the Court granted Plaintiffs leave to amend the Complaint and denied Plaintiff

19   Linz's motion, ECF No. 54, as moot, with leave to renew.  ECF No. 66.

20

REPORT AND RECOMMENDATION - 3

On July 29, 2020, Plaintiffs filed the First Amended Complaint (FAC), removing Davis as a named Plaintiff. ECF No. 67. Defendants' Answer to the FAC, again denies liability, asserts a variety of affirmative defenses, and asserts a single counterclaim against Plaintiff Linz for "Breach of Contract: Indemnification." ECF No. 70 at 13. As operative facts, Defendants allege that Plaintiff Linz entered into an agreement with Core Values (herein referred to as "the Linz Agreement"). Though a copy of the Linz Agreement was not appended to the Answer, Defendants cite the court record containing the agreement between Linz and Core Values. ECF No. 70 at 12 (citing ECF No. 15). According to the counterclaim, the relevant provisions in the Linz Agreement state that Plaintiff Linz will:

> indemnify and save [Core Values], its parents, assigns, subsidiaries, affiliates, agents and employees, harmless from and against any losses, claims, demands, liabilities, suits or actions of any kind (including expenses and attorneys' fees) for . . . damages connected with the performance of this Agreement.

ECF No. 70 at 13.

Although Defendants defend against the wage claims on the basis that Plaintiffs are independent contractors, not employees, Defendants counterclaim alleges that "[a]s to Aaron Kaminsky, to the extent Core Values was his 'employer,' Jeremiah Linz was also their [sic] employer." ECF No. 70 at 12. Defendants allege Plaintiff Linz's business, Nice Guy Road Service, worked "in

REPORT AND RECOMMENDATION - 4

concert with Core Values to employ" co-Plaintiff Kaminsky, and exercised "significant control over the wages, hours, and working conditions" of Kaminsky's employment.  ECF No. 70 at 13.  "[A]mong other things," Defendants assert that Plaintiff Linz "a) recruited Aaron Kaminsky; (b) supervised and controlled his work schedule, conveying his business hours to Core Values; c) maintained work records for Kaminsky; and d) obtained remuneration based in part on Kaminsky's labor."  ECF No. 70 at 14.  Defendants further allege that Plaintiff Linz requested, negotiated, and received compensation from Core Values based on the performance of work by co-Plaintiff Kaminsky, and he failed to pay him minimum wage or overtime.  ECF No. 70 at 13.

On September 1, 2020, Plaintiff Linz moved to dismiss the counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), reasserting similar grounds for dismissal as in the motion filed July 2, 2020.  ECF No. 74; *see also* ECF No. 54.  Defendants did not respond.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a litigant may move for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' "  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d

1116, 1121 (9th Cir. 2008) (citation omitted). A motion to dismiss a counterclaim

brought pursuant to Rule 12(b)(6) is evaluated under the same standard as a motion

to dismiss a plaintiff's complaint. *See, e.g.*, *Starr v. Baca,* 652 F.3d 1202, 1216

(9th Cir. 2011) ("[A]llegations in a . . . counterclaim may not simply recite the

elements of a cause of action, but must contain sufficient allegations of underlying

facts to give fair notice and to enable the opposing party to defend itself

effectively."); *Boon Rawd Trading Int'l v. Paleewong Trading Co.*, 688 F. Supp.

2d 940, 947 (N.D. Cal. 2010).

A motion to dismiss for failure to state a claim will be denied if the pleading

alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC

v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility"

when it "pleads factual content that allows the court to draw the reasonable

inference" that Plaintiff "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

677-78. In reviewing the plausibility of a claim, courts "accept factual allegations

in the complaint as true and construe the pleadings in the light most favorable to

the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable

REPORT AND RECOMMENDATION - 6

1    inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

2    (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

3    Dismissal without leave to amend is inappropriate unless it is beyond doubt that

4    the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*,

5    573 F.3d 728, 737 (9th Cir. 2009).

6      When deciding a motion to dismiss, the Court may consider documents

7    incorporated by reference into the pleading without converting the motion into one

8    for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

9    2003).  The doctrine of incorporation-by-reference treats documents outside the

10    complaint as though they are part of the complaint itself. *Khoja v. Orexigen*

11    *Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  It applies "if the

12    [defendant] refers extensively to the document [in the counterclaim] or the

13    document forms the basis of the [defendant's] claim." *Id*. (citations omitted).  A

14    document is incorporated by reference where "the [pleading party's] claim depends

15    on the contents of a document, [the opposing party] attaches the document to its

16    motion to dismiss, and the parties do not dispute the authenticity of the document,

17    even though the [pleading party] does not explicitly allege the contents of that

18    document in the [pleading]." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.

19    2005).  Here, the Linz Agreement, which Defendants attached as an exhibit to an

20    earlier declaration, ECF No. 15-2 at 5-9, "forms the basis" of their counterclaim;

REPORT AND RECOMMENDATION - 7

1 Defendants cite to the Linz Agreement in the court record as part of the

2 counterclaim; and no party has questioned the agreement's authenticity.  *See* ECF

3 No. 74 at 3-4; *Knievel*, 393 F.3d at 1076.  For these reasons, the undersigned

4 considers the Linz Agreement incorporated by reference.

5 **DISCUSSION**

6      In the counterclaim, Defendants contend that if co-Plaintiff Kaminsky

7 establishes he is entitled to compensation under the FLSA (Count I) or

8 Pennsylvania state wage law (Count II), then Defendants are entitled to

9 indemnification from Plaintiff Linz under the Linz Agreement as a co-employer.

10 ECF No. 65 at 3 (Linz should be "held liable for . . . any damages award in favor

11 of his putative employee[], Aaron Kaminsky.").  As such, Defendants'

12 counterclaim is conditioned on a finding of liability against Defendants.

13      Plaintiff Linz seeks dismissal of the counterclaim for failure to state a breach

14 of contract claim for two primary reasons.  First, he asserts the counterclaim does

15 not fall within the scope of the indemnity provision of the Linz Agreement because

16 the "only reasonable interpretation of this indemnification provision" is that it does

17 not cover "actions arising from Defendants' alleged violations of the FLSA"; and

18 the indemnification provision does not apply to lawsuits for Defendants' own

19 wrongdoing and Defendants do not allege Plaintiff Linz caused Defendants'

20 violations of the FLSA.  ECF No. 74 at 3-5.  Second, he contends that Defendants

REPORT AND RECOMMENDATION - 8

do not allege sufficient facts to support a theory of liability based on joint

employment.  ECF No. 74 at 6-7.

## A. Scope of Indemnification Provision

Plaintiff Linz contends that the indemnity provision of the Linz Agreement

cannot be reasonably read to encompass any damages arising from the claims

asserted by co-Plaintiff Kaminsky.  This argument relies on the interpretation of

the Linz Agreement.[1]

---

[1] Whether the Linz Agreement is enforceable and whether Plaintiff Linz is a co-employer are not issues before the Court at this time.  *See* ECF No. 67 at 6 (Plaintiffs' First Amended Complaint claims it is "illegal and void).  If the FLSA applies to Kaminsky, then there is a colorable argument that Core Values may not shift any liability or costs arising from Plaintiffs' FLSA lawsuit to any other entity or person, by contractual agreement.  However, the enforceability of the indemnification provision under the FLSA or state law was not briefed by either party.  There are cases that hold that there is no right of contribution or indemnification for employers held liable under the FLSA.  *Herman v. RSR Sec. Servs., Ltd*., 172 F.3d 132, 144 (2d Cir. 1999); *Lyle v. Food Lion, Inc*., 954 F.2d 984, 987 (4th Cir. 1992); *Martin v. Gingerbread House, Inc*., 977 F.2d 1405, 1408 (10th Cir. 1992); *LeCompte v. Chrysler Credit Corp*., 780 F.2d 1260, 1264 (5th Cir. 1986).  *Herman* held that the prohibition on indemnification and contribution exists regardless of the status of the party from whom it is sought—be it a co-employer, an employee, or other third-party.  *See Herman*, 172 F.3d at 143-44. The law appears less settled, however, as to whether joint employers, or co-employers, can enter into an indemnity agreement, thereby allocating the risks amongst themselves.  *See, e.g., McDougal v. G&S Tobacco Dealers, LLC*, 712 F. Supp. 2d 488, 497 (N.D. W.Va. 2010); *Gustafson v. Bell Atlantic Corp*., 171 F. Supp. 2d 311, 328 (S.D. N.Y. 2001) (permitting employer to seek contractual indemnity for FLSA liability flouts the purpose of the statute); *Varnell, Struck & Assoc., Inc. v. Lowe's Companies, Inc.*, Nos. 5:06-cv-068, 5:07-cv-104; 2008 WL 1820830, at *9-10 (W.D. N.C. Apr. 21, 2008) (rejecting the notion that contractual duties to indemnify are unenforceable under the FLSA); *Flores v. Mamma*

The indemnification provision in its entirety states:

> 9. Indemnity.  [Linz] agrees to indemnify and save [Core Values], its parents, assigns, subsidiaries, affiliates, agents and employees, harmless from and against any and all losses, claims, demands, liabilities, suits or actions of any kind (including expenses and attorneys' fees) for injuries to, or death of, any person or persons, including the employees of each party hereto, and property loss or damage connected with the performance of this Agreement, whether or not caused by a negligent act or omission of either party hereto, its agents, contractors or employees, except that [Linz] assumes no liability for the sole negligent acts of [Core Values].  [Linz] agrees that the offset of monies in response to a Client's damage complaint does not alter or, in any way, lessen [Linz's] obligations under this paragraph except as to matters which are fully resolved by such offset.  This paragraph shall survive the termination or expiration of this Agreement.

ECF No. 15-2 at 6.

### 1.  *Washington law applies*

As Plaintiff Linz's motion raises an issue of contract interpretation, the Court must first decide which state law governs.  Defendants contend Washington law governs the contract, citing the choice-of-law provision contained in the Linz Agreement, which states, "[t]he validity, interpretation and construction of this Agreement will be governed by the law of the State of Washington . . . ."  ECF No. 65 at 4 (citing ECF No. 15-2 at 7).  Both parties cite to Washington law to support their arguments for or against granting the motion to dismiss.  ECF No. 74 at 5;

---

*Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278 (E.D. N.Y. 2013) (dismissing counterclaim asserted under joint employer liability as contrary to the statutory intent of both the FLSA and state labor law).

REPORT AND RECOMMENDATION - 10

1   ECF No. 65 at 4-5.  Based on these circumstances and Plaintiff Linz's awareness

2   of Defendants' position at the time he re-filed his motion to dismiss, the

3   undersigned finds Washington law applies.  *See McKee v. AT & T Corp.*, 164

4   Wash.2d 372, 384 (2008) (Washington courts "generally enforce contract choice of

5   law provisions . . . .").

6               *2.  Contract interpretation standards*

7           Washington follows the objective manifestation theory of contracts.  *Hearst*

8   *Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 503 (2005).  "Under this

9   approach, we attempt to determine the parties' intent by focusing on the objective

10  manifestations of the agreement, rather than on the unexpressed subjective intent

11  of the parties."  *Id.*  "We generally give words in a contract their ordinary, usual,

12  and popular meaning unless the entirety of the agreement clearly demonstrates a

13  contrary intent."  *Id.*  Contracts are viewed as a whole; particular language is

14  interpreted in the context of other contract provisions.  *See Weyerhaeuser Co. v.*

15  *Commercial Union Ins. Co.*, 142 Wash.2d 654, 669–70 (2000).  "In Washington,

16  the intent of the parties to a particular agreement may be discovered not only from

17  the actual language of the agreement, but also from viewing the contract as whole,

18  the subject matter and objective of the contract, all the circumstances surrounding

19  the making of the contract, the subsequent acts and conduct of the parties to the

20  contract, and the reasonableness of respective interpretations advocated by the

REPORT AND RECOMMENDATION - 11

1    parties." *Scott Galvanizing Inc., v. Nw. EnviroServs., Inc.*, 120 Wash.2d 573, 580

2    (1993) (citations and quotations omitted). "If a contract has two or more

3    reasonable meanings when viewed in context, a question of fact is presented."

4    *Bort v. Parker*, 110 Wash. App. 561, 575 (2002). A factual determination of what

5    the parties intended in an ambiguous contract cannot be adjudicated on a motion to

6    dismiss. *See SARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1008 (9th Cir.

7    2014); *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)

8    (where the language "leaves doubt as to the parties' intent" the court errs in

9    dismissing for failure to state a claim).

10        Indemnification clauses are strictly construed against the drafter. *See United*

11   *States v. Seckinger*, 397 U.S. 203, 210 (1970) (holding that with respect to

12   indemnification clauses "a contract should be construed most strongly against the

13   drafter"). Moreover, "if [a defendant] expect[s] to shift the ultimate responsibility

14   for its [wrongful conduct] to [a plaintiff], the mutual intention of the parties to this

15   effect should appear with clarity from the face of the contract." *Seckinger*, 397

16   U.S. at 212.

17        *3. Discussion*

18        The plain language of the indemnity provision requires Plaintiff Linz to

19   indemnify Core Values against "all losses, claims, demands, liabilities, suits or

20   actions of any kind (including expenses and attorneys' fees)" for: (1) "injuries to,

or death of, any person or person, including the employees of each party hereto";

and (2) "property loss or damage connected with the performance of this

Agreement."  ECF No. 15-2 at 6.

Linz contends the indemnification provision "plainly . . . has no applicability

to claims of FLSA violations," as it was intended to cover "torts" resulting from

his own performance of the contracted for services, which are contractually

defined as "services such as fuel delivery and jump starts."  ECF No. 74 at 4; ECF

No. 15-2 at 5.  For support, he also points to section 10 of the Linz Agreement

requiring that he maintain contractual liability insurance against the liabilities

listed in the indemnity provision, with limits for bodily injury and property

damage.  ECF No. 74 at 4 (citing ECF No. 15-2 at 6-7)).  Defendants construe the

second phrase more broadly, separating the term "damage" from its modifier

"property," to claim that the second phrase generally "covers all 'damage

connected with the performance of the Agreement,' " including attorneys' fees and

liability incurred in connection with "Linz's compliance with federal law, which

necessarily includes federal labor law."  ECF No. 65 at 5 (emphasis added).  The

parties cite no authority in support of their arguments.

The undersigned finds that, under any reasonable reading, the scope of the

provision does not cover the type of claim in this action.  At issue here is the

phrase "property loss or damage connected with the performance of this

Agreement."  The only "damage" that Defendants allege are damages it may incur in the event co-Plaintiff Kaminsky successfully proves that Defendants, as the employer paying wages, violated the FLSA or state wage laws, as alleged in the FAC.  As used in the clause at issue, "property" modifies both "loss" and "damage."  Because Defendants counterclaims relate to damages for Defendants' alleged violation of wage laws, and not to any property loss or damage, they do not fall within the purview of this clause.  *See, e.g., Landmark Health Solutions, LLC v. Not For Profit Hosp. Corp*, 950 F. Supp. 2d 130, 139 (D.D.C. 2013) (counterclaims related to damages for alleged breach of contract did not constitute "property loss or damage" or personal injury, and therefore did not fall within the purview of the indemnification clause).

Furthermore, the alleged loss at issue in this case stems from Defendants' alleged own actions and legal obligations to comply with the law, not Plaintiff Linz's performance as an alleged independent contractor.  This type of loss is not covered by the plain language of the indemnification provision which covers only certain losses "connected with" Linz's performance of the Linz Agreement.  ECF No. 15-2 at 6.  Not surprisingly, Defendants' counterclaim makes no assertion that Plaintiff Linz caused the alleged failure of Defendants to pay appropriate wages. ECF No. 70 at 12-14.  Accordingly, the counterclaim does not fall within the scope of indemnification clause in the Linz Agreement.

REPORT AND RECOMMENDATION - 14

In reaching this conclusion, the undersigned is persuaded by other cases that have interpreted the scope of substantially similar indemnification provisions and indemnity counterclaims asserted in wage act actions.[2]  *See, e.g., Casias v. Distribution Management Corp., Inc.*, No. 1:11-CV-00874 MV/RHS, 2012 WL 4511376, at *5 (D.N.M. Sept. 28, 2012) (finding indemnification provision for harm caused by "the performance or failure of performance of this Agreement by [Plaintiff]" did not cover Defendant's wrongful conduct under New Mexico wage act and dismissing counterclaim); *Byles v. Transglobal Servs, LLC*, No. MO:16-CV-00145-RAJ, 2016 WL 10957321, at *5-6 (W.D. Tex. Oct. 26, 2016) (holding FLSA lawsuit did not fall within scope of contractual indemnification provision because FLSA action is not for personal injury or property damage and because it did not "expressly provide indemnification or contribution for third party claims under the FLSA."); *Yaw Adu Poku v. Beavex, Inc*., Civil Action No. 13-3327

---

[2] Relevantly, Defendants' Answer to the FAC does not include the counterclaim previously asserted, *see* ECF No. 48, which other courts have upheld, at the motion to dismiss stage, involving indemnification counterclaims in the FLSA context in the event the *defendant* prevailed in establishing the plaintiff was an independent contractor.  *See, e.g.*, *Jones v. Henry Industries, Inc.*, No. 4:16-cv-1184-SNLJ, 2017 WL 513038, at *3-5 (E.D. Mo. Feb. 8, 2017); *Spellman v. American Eagle Express, Inc*., 680 F. Supp. 2d 188, 192 (D.D.C. 2010); *Hose v. Henry Industries, Inc.*, No. 4:15-cv-01913-JAR, 2017 WL 386545, at *4-5 (E.D. Mo. Jan. 27, 2017); *Dobbins v. Scriptfleet, Inc*., No. 8:11-cv-1923–T–24–AEP, 2012 WL 2282560, at *1 (M.D. Fla. June 18, 2012) ("Defendant's indemnification counterclaim is viable because Defendant is not seeking indemnification for an FLSA liability imposed upon it.").

REPORT AND RECOMMENDATION - 15

1    (SRC), 2013 WL 5937414, at *1 (D.N.J. Nov. 1, 2013) ("This is not litigation over

2    something that Plaintiffs made happen by their actions in performing courier

3    work. . . . The allegedly illegal conduct of Defendant in paying Plaintiffs cannot

4    reasonably be understood to fall within the scope of the alleged indemnification

5    provision, as it arises from Defendant's performance, not Plaintiffs'."); *Phelps v.*

6    *3PD, Inc.*, No. 08-CV-387-HU, 2008 WL 4911909, at *2 (D.Or. Nov. 12, 2008)

7    (finding that "Defendant's allegedly improper classification of Plaintiffs as

8    independent contractors rather than employees" did not fall within the contract's

9    indemnity provision).

10         The undersigned concludes the same result is warranted here.  As

11   Defendants' counterclaim for indemnification cannot reasonably be said to arise

12   from property damage or any damage connected with Plaintiff Linz's performance

13   of the alleged independent services agreement, there is no support for an inference

14   that the parties agreed that the indemnification provision applies to liability

15   associated with co-Plaintiff Kaminsky's wage claims.  Plaintiff Linz has

16   demonstrated that the counterclaim fails to state a claim for relief pursuant to

17   Federal Rule of Civil Procedure 12(b)(6).

18       **B. Joint Employment**

19         Alternatively, Plaintiff Linz contends that even if the alleged damages were

20   within the scope of the indemnification provision, the counterclaim should be

dismissed for the distinct reason that it alleges insufficient facts that Plaintiff Linz is a "co-employer" of Plaintiff Kaminsky.[3]  ECF No. 74 at 6.  The Court need not address this alternative argument should it agree that the indemnification provision does not apply to Defendants' liability for co-Plaintiff Kaminsky's claims. However, to determine whether there is a sound basis to dismiss the counterclaim with prejudice, as requested by Plaintiff Linz, a discussion the theory of joint employment liability under the FLSA is warranted.[4]  *See Harris,* 573 F.3d at 737 (a dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment.").

The FLSA grants employees certain rights and provides certain remedies if an employer violates the FLSA's provisions regarding hours, minimum wage, and overtime compensation.  To be liable under the FLSA, a defendant must be a plaintiff's "employer."  "Employer" is defined under the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an

---

[3] Defendants counterclaim alleges Plaintiff Linz should "reimburse" Core Values for losses related to co-Plaintiff Kaminsky "as a co-employer" pursuant to the "indemnity provision" of the Linz Agreement.  ECF No. 70 at 14.  Furthermore, Defendants' prayer for relief seeks to hold Linz "jointly and severally liable with Core Values . . ." *Id.*

[4] Defendants counterclaims appear to seek indemnification as to the alleged violations of federal and state law.  ECF No. 70 at 14.  Plaintiff Linz's motion does not separately analyze joint employer liability in the context of the state law claims.  Thus, the Court discusses only the test under the FLSA.

employee." 29 U.S.C. § 203(d). "Employer" under the FLSA is not limited by the common law concept of "employer" and "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); *see also Torres-Lopez v. May*, 111 F.3d 633, 641 (9th Cir. 1997) ("[T]he FLSA definition of employment is broad."). The Ninth Circuit applies the *Bonnette* economic reality test to determine whether an entity is an employer under the FLSA. *See Bonnette*, 704 F.2d at 1470; *see also Perez v. Lantern Light Corp*., No. C12-01406 RSM, 2015 WL 3451268, at *3 (W.D. Wash. May 29, 2015). That test looks to "the circumstances of the whole activity," and considers four factors. *Bonnette*, 704 F.2d at 1470. Those factors are whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. (internal quotation and citation omitted).[5]

_____

[5] The undersigned notes that the Department of Labor promulgated a new final rule effective March 16, 2020, which includes regulations related to FLSA and the interpretation of the joint employer relationship. The new regulation also states the court must consider whether the other person: (i) hires or fires the employee; (ii) supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (iii) determines the employee's rate and method of payment; and (iv) maintains the employee's employment records. 29 C.F.R. § 791.2(a)(1). "The potential joint employer must actually exercise—

REPORT AND RECOMMENDATION - 18

"Two or more employers may jointly employ someone for purposes of the FLSA." *Id.* at 1469 (citing *Falk v. Brennan*, 414 U.S. 190, 195, (1973)). "All joint employers are individually responsible for compliance with the FLSA." *Id.* (citing 29 C.F.R. § 791.2(a) (1981)); *see also* 29 C.F.R. § 791.2(f) (effective March 16, 2020) ("For each workweek that a person is a joint employer of an employee, that joint employer is jointly and severally liable . . . ."); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003); *Boucher v. Shaw*, 572 F.3d 1087, 1094 (9th Cir. 2009). The question of whether an entity is a joint employer is a legal question for the court to resolve. *Moreau v. Air France*, 356 F.3d 942, 945 (9th Cir. 2004) (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)); *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055 (E.D. Wash. 2013), *order clarified on other grounds*, 2013 WL 12167930 (E.D. Wash. 2013).

Here, the critical issue is that "the joint employment doctrine addresses only from *whom* the *employee* may collect damages." *New York v. Scalia*, 1:20-cv-1689, 2020 WL 5370871, at *4 (S.D.N.Y. Sept. 8, 2020). Defendants have

---

directly or indirectly—one or more of these indicia of control to be jointly liable under the Act." 29 C.F.R. § 791.2(a)(3)(i). "[A]dditional factors may be relevant for determining joint employer status," "but only if they . . . indic[ate] whether the potential joint employer . . . significant[ly] control[s] . . . the terms and conditions of the employee's work." 29 C.F.R. § 791.2(b); *but see New York v. Scalia*, 1:20-cv-1689, 2020 WL 5370871, at *4 (S.D.N.Y. Sept. 8, 2020) (partially invaliding new rule under the Administrative Procedure Act).

identified no basis for assertion of a claim for co-employer liability other than the

Linz Agreement.  ECF No. 65 at 6; *see* footnote 1, supra.  As Defendants have not

identified any provision therein allocating FLSA risks amongst themselves and

Plaintiff Linz, Defendants have not stated a cognizable claim for indemnification

as a joint employer based on contract.  Accordingly, it is unnecessary to determine

whether Defendants otherwise failed to properly plead Linz's joint employer

status.

## C. Amendment

Plaintiff Linz seeks dismissal of Defendants' counterclaim with prejudice

claiming the record shows any amendment would be futile.  ECF No. 74 at 8.

However, the counterclaim presents inherently complex legal and fact-intense

issues, and there are instances in which indemnity counterclaims against alleged

independent contractors have survived dispositive motion practice.  *See, e.g., Itzep*

*v. Target Corp.*, Civil Action No. SA-06-CA-568-XR, 2010 WL 2278349, at *17-

19 (W.D. Tex. June 4, 2010).  Without full and complete briefing, it is not clear

that leave to amend the counterclaim would be futile.  Accordingly, the

undersigned recommends that Defendants' counterclaim be dismissed without

prejudice.  Should Defendants seek to amend the Answer to include a viable

counterclaim, they should seek leave of Court.

REPORT AND RECOMMENDATION - 20

# RECOMMENDATION

**Accordingly; IT IS HEREBY RECOMMENDED that**:

1.      Plaintiff Linz's Motion to Dismiss (**ECF No. 74**) be **DENIED IN PART**, and **GRANTED IN PART**, as the undersigned recommends dismissal without prejudice;

2.      Defendants' counterclaim against Plaintiff Linz for breach of contract, ECF No. 67, be dismissed without prejudice; and

3.      Defendants be instructed to seek leave of Court to amend their counterclaim.

# OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's

REPORT AND RECOMMENDATION - 21

determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED December 4, 2020.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 22