FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 22, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JEREMIAH LINZ and AARON
KAMINSKY, individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

CORE VALUES ROADSIDE
SERVICE, LLC, and MARK
HYNDMAN,

Defendants.

No.  2:20-CV-00107-ACE

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT

**ECF Nos. 93, 106, 133**

**BEFORE THE COURT** are the parties' cross motions for summary

judgment.  ECF Nos. 93, 106.  Plaintiffs are represented by Matthew S. Okiishi,

Stephen E. Imm, and Matthew Z. Crotty; Defendants are represented by Jeremy S.

Hyndman.  The case was reassigned to the undersigned magistrate judge on

September 21, 2022.  ECF No. 115.

## BACKGROUND

Plaintiffs filed a complaint on July 2, 2019, asserting federal question

jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT - 1

pendent state law claims pursuant to 28 U.S.C. § 1367.  ECF No. 1.  Plaintiffs filed

an Amended Complaint on July 29, 2020, asserting federal jurisdiction on the same

grounds.  ECF No. 67.  Plaintiffs' Amended Complaint raises causes of action for

failure to pay statutory minimum wages in violation of the Fair Labor Standard Act

("FLSA"), 28 U.S.C. § 206; failure to pay overtime wages in violation of FLSA,

28 U.S.C. § 207; unjust enrichment; and failure to pay minimum and overtime

wages in violation of Ohio and Pennsylvania state law.  ECF No. 67 at 16–20.  The

parties have filed cross-motions for summary judgment on the issue of liability for

violations of FLSA.  ECF Nos. 93, 106.

## FACTS[1]

Defendant Core Values Roadside Service, LLC (hereinafter "Core Values")

is a Spokane, Washington roadside assistance company that offers such services as

tire changes, fuel delivery, jump starts and lockout services.  Core Values,

---

[1] Plaintiffs filed a "Statement of Material Facts Not in Dispute" pursuant to this Court's
local rules.  ECF No. 94; *see* LCivR 56(c)(1)(A) ("A party filing a motion for summary
judgment must separately file a "Statement of Material Facts Not in Dispute" which
shall specify the undisputed material facts relied upon to support the motion. . . .  As to
each fact, the statement shall cite to the specific page or paragraph of the record where
the fact is found.").  Defendants did not file a "Statement of Material Facts Not in
Dispute" with respect to their cross-motion for summary judgment and additionally
failed to file a "Statement of Disputed Material Facts" as required by LCivR 56(c)(1)(B)
("A party filing an opposition to a motion for summary judgment must separately file a
"Statement of Disputed Material Facts" which shall specify the disputed material facts
precluding summary judgment. . . .  As to each disputed fact, the statement shall cite to
the specific page or paragraph of the record where the disputed fact is found. . . . The
opposing party shall also briefly describe any evidentiary objection to the moving
party's asserted fact.").

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT - 2

operating in several states, acts as an intermediary between insurance providers that offer roadside assistance coverage and businesses that provide roadside assistance services.  Defendant Mark Hyndman is the "managing member" of Core Values.

Named Plaintiff Jeremiah Linz worked as a roadside assistance technician in Ohio and Pennsylvania from 2017 to 2019.  Named Plaintiff Aaron Kaminsky worked as a roadside assistance technician in Pennsylvania from September 2018 to April 2019.

Prior to providing services for Core Values, Plaintiffs signed Independent Service Provider Agreement (hereinafter "Agreements").  *See* ECF No. 93-1, Ex. D.[2]  The Agreements provide that the individual acknowledges he/she is an independent contractor and not an employee, agent, partner or representative of Core Values.  *Id.* ¶ 14.  The terms of the Agreement indicate that the Individual Service Provider (hereinafter "ISP") shall be available to accept Core Values dispatches during its (the ISP's) hours of operation and shall inform Core Values of any changes in its hours of operation; drivers must be uniformed and maintain a clean and neat appearance; the trucks must display the ISP's company name; the ISP may provide additional services to motorists not offered by Core Values, charging the motorist directly; Core Values had the right to amend the rate schedule at any time with the new rate automatically becoming a part of the agreement unless the ISP provided written notice that they were electing to terminate the agreement; the ISP was free to contract with other motoring plans to provide services; and the agreement could be terminated at will and without cause. *Id.* ¶¶ 1, 2, 3, 7, 13.  Significantly, the agreement contemplated that an ISP could

---

[2] Consistent with the theme of unhelpful exhibits that pervades the briefing of the parties, this exhibit is alternately nearly unreadable because it is blurry or rendered in what appears to be the equivalent of 6-point type.

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 3

retain its own employees or contractors, subject to drug screening and behavior metrics. *Id.* ¶ 22.

Plaintiffs allege Core Values required them to be "on-call" twenty-four hours per day, seven days per week; keep a dispatch application on their cell phone running at all times; wear a uniform supplied by Core Values; and maintain Core Values' logo/livery on their vehicles. ECF No. 94 ¶ 5–6 (citing exhibits in support of ECF No. 93-2). Plaintiffs also assert they were not permitted to hire their own employees and could not provide services to motorists that were not offered by Core Values. ECF No. 93-2 at 2 ¶ 13. Plaintiffs further allege Core Values threatened to deduct pay ($8.00) if Plaintiffs refused a dispatch or otherwise failed to respond. ECF No. 94 ¶ 7 (citing ECF No. 93-1, Ex. A).

Defendants, for their part, assert that, contrary to Plaintiffs allegations, Plaintiffs could provide additional services to stranded motorists that were not offered by Core Values, billing the motorists directly; Plaintiffs established their own business hours and were not required to be "on call" at all times; Plaintiffs could receive compensation for services completed by others;[3] and, while Plaintiffs were required to wear a uniform and have signage on their vehicles, it did not need to be Core Values' uniform or signage. ECF No. 106 at 2–3 (citing ECF No. 105 ¶¶ 4, 11, 15). While Defendants' decision to counter a self-serving declaration with another of their own does not assist them, the Agreements themselves do. *See* ECF No. 93-1, Ex. D at 132–35.

Plaintiffs aver they regularly worked in excess of forty hours a week, ECF No. 94 ¶ 8 (citing ECF No. 93-2), and that Core Values maintained records of

---

[3] Defendants note that Named Plaintiff Jeremiah Linz received compensation for work performed by his brother, Daniel Braun, in addition to compensation for his own work. ECF No. 106 at 3 (citing ECF No. 105 ¶ 8). Plaintiffs do not dispute that Mr. Braun billed under Plaintiff Linz's name. ECF No. 108 at 6.

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 4

1  Plaintiffs' completed jobs through rate schedules, executed Agreements,

2  onboarding information, and payroll.  Core Values paid a flat fee for the work

3  performed by Plaintiffs.  ECF No. 70 ¶ 22.

4  **LEGAL STANDARD**

5  "Federal Rule of Civil Procedure 56, which governs motions for summary

6  judgment, is 'arguably ambiguous' as to the scope of the record that the district

7  court must review to determine whether summary judgment is appropriate." *Fair*

8  *Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th

9  Cir. 2001) (quoting *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th

10  Cir. 2001)).  However, Ninth Circuit caselaw has established that when parties file

11  cross-motions for summary judgment, a court must "review the evidence properly

12  submitted in support of [the] motion[s] to determine whether it present[s] a

13  disputed issue of material fact . . . ." *Id*.  In so doing, that court must "evaluate

14  each motion separately, giving the nonmoving party in each instance the benefit of

15  all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092,

16  1097 (9th Cir. 2003).

17  Federal Rule of Civil Procedure 56(a) states that a party is entitled to

18  summary judgment in its favor if "the movant shows that there is no genuine issue

19  as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A

20  fact is "material" if it might affect the outcome of the suit under the governing law.

21  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–249 (1986).  A dispute is

22  "genuine" as to a material fact if there is sufficient evidence for a reasonable jury

23  to return a verdict for the nonmoving party. *Id*. at 248.

24  Once the moving party has carried the burden under Rule 56, the party

25  opposing the motion must do more than simply show there is "some metaphysical

26  doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

27  *Corp.*, 475 U.S. 574, 586 (1986).  The party opposing the motion must present

28

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT - 5

facts in evidentiary form and cannot rest merely on the pleadings. *Anderson*, 477 U.S. at 248. Genuine issues are not raised by mere conclusory or speculative allegations. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Supreme Court has ruled that Federal Rule of Civil Procedure 56(c) requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Therefore, the question on summary judgment is "whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252. Where there is no evidence on which a jury could reasonably find for the nonmoving party, summary judgment is appropriate. *Id.* at 252.

## DISCUSSION

### I.    Fair Labor Standards Act

Plaintiffs bring causes of action under the Fair Labor Standards Act, 28 U.S.C. §§ 206–207. Both parties agree that whether FLSA applies hinges on whether Plaintiffs are considered "employees" under FLSA, which is determined by a four-factor "economic reality" test. ECF No. 93 at 4–5; ECF No. 106 at 3–4.[4]

---

[4] Plaintiffs have also urged this Court to consider "non-regulatory" factors in determining whether they were employees under FLSA. ECF No. 93 at 7. The Court would have preferred that Defendants had responded to this argument in their Response. However, Defendants' puzzling failure to respond is ultimately irrelevant: the Ninth Circuit has held that those factors apply "only to circumstances in which a company has contracted for workers who are directly employed by an intermediary company." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003).

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 6

Those four factors are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 525 F. Supp. 128 (N.D. Cal. 1981). However, these factors "are not etched in stone and will not be blindly applied." *Id*. Rather, the issue of employment must ultimately be determined by "the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). As the Ninth Circuit has previously held, "[t]he touchstone is 'economic reality.'" *Bonette*, 704 F.2d at 1469 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961). This is because the term "employer" must be given a broad meaning "in order to effectuate the FLSA's broad remedial purposes." *Id*.

**A.      Whether Defendants Had the Power to Hire and Fire Plaintiffs**

Plaintiffs argue that Defendants had the power to hire and fire them because the Agreements could "be terminated at will and without cause." ECF No. 93 at 6. For their part, Defendants contend that they could "terminate relationships with ISPs,[5] but not hire or fire their works [sic]." ECF No. 106 at 4. "For example, [Defendants] could not terminate [Plaintiff] Linz's office manager, Elizabeth Mahan." *Id*.

A plain reading of the Agreements results in only one legal conclusion: either party could terminate these Agreements. The language in the clause makes no mention as to who may terminate the Agreement, and, in fact, the Agreements explicitly state elsewhere that Plaintiffs may "terminate [the] Agreement." *E.g.*,

---

[5] Defendants use the term "Independent Service Provider" ("ISP") throughout their briefings. It is unclear whether Defendants are referring only to Plaintiffs or also to all other ISPs similarly situated to Plaintiffs who are not privy to this lawsuit.

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 7

ECF No. 93-1 at 132 ¶3.  The four corners of Plaintiff Linz's agreement provide no support for the proposition that Defendants could terminate Plaintiff Linz's office manager, rather they support the conclusion that, but for the drug testing and behavior metrics discussed above, Defendants had no direct authority over "employee(s) or contractors(s)."  ECF No. 93-1, Ex. D at 135 ¶ 22; *see In re Century Cleaning Servs., Inc.*, 195 F.3d 1053, 1062 (9th Cir. 1999) (Thomas, J., dissenting) ("*expressio unius est exclusio alterius* (the expression of one thing is the exclusion of the others)"), *abrogated on other grounds by Lamie v. U.S. Tr.*, 540 U.S. 526 (2004).  Typically, employees are not permitted to hire support staff to work for their benefit without permission from their employer.  Plaintiffs' submissions make their opponents' case for summary judgment.  Plaintiffs provide no reason for the Court to look outside the four corners of these Agreements,[6] and their factually unsupported arguments do not create a contested issue of material fact.

Plaintiffs admit that Daniel Braun on one occasion billed $11 per run under Plaintiff Linz's name, when Plaintiff Linz billed $13 at essentially the same time of day for the same type of work, albeit in different states.  *See* ECF No. 108 at 6. This supports a myriad of factual findings, including that Plaintiff Linz was able to use Braun as a subcontractor.  *See id.*  It also could support a suspicion that the

---

[6] The amendments to the Agreement provide no support either.  By way of example, Plaintiff Alvandipour's Declaration asserts the requirement of 24-hours on call status combined with a $8 no response fee.  *See* ECF No. 93-2 at 1–2 ¶¶ 6–8.  However, Attachment A to that declaration shows that control over their business hours, and thus any fees, ultimately lies with the ISPs.  ECF No. 93-2 at 3 (Defendants' Memo to Subcontractors dated 1-18-2016) ("We will be relying on your business *during the times you have provided . . . .*") (emphasis added).  Plaintiffs' assertions in declarations, without any factual support, do not further their argument.

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 8

difference in the rates Plaintiffs claim were non-negotiable was addressed by an exchange of $2 per run, between some combinations of the parties, outside the confines of regular billing.  *See id.*  However, the clearly reciprocal ability to cancel these business relationships belies Plaintiffs' claims.  Plaintiffs have not provided competent evidence to question the plain reading of the Agreements.  Defendants are entitled to summary judgement as to this factor.

**B.    Whether Defendants Supervised and Controlled Plaintiffs' Work Schedules or Conditions of Employment**

Plaintiffs argue that Defendants controlled their work schedules because Defendants required them to keep a mobile dispatch application running on their phones at all times, and failure to respond to a call—even after close of a Plaintiff's business hours—would result in an $8 penalty.  ECF No. 93 at 6–7.  While Defendants, again without any explanation, do not respond and thus convert this into an uncontested fact for the purposes of this motion, to the extent that they are not belied by Plaintiffs' own exhibits (which, as indicated above, they are), this does not alter the Court's conclusion.  Plaintiffs' citation to authority is clearly distinguishable, [7] and the idea that there might be a penalty for a party engaging in

---

[7] Plaintiffs' argument here seems to rely on the proposition that other courts have found an employment relationship where so-called independent contractors were penalized by the defendant.  *See, e.g.*, *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 148 (D.D.C. 2011) (finding that a club's ability to fine dancers for violating club rules was indicative of the club's role as employer even when violations did not always result in fines and some fines were never collected).  However, in those cases, the penalization of plaintiffs by defendants was only one factor in the court's analysis.  *See, e.g.*, *id.* (club's ability to enforce rules was only one of five factors considered); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 921–22 (S.D.N.Y. 2013)  (applying same five factors as *Thompson*);  *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326,

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 9

1  an action that frustrates the purpose of the contract is unremarkable, as Defendants

2  were in fact subcontractors themselves.  *See* ECF No. 93-2 at 3 (Defendants'

3  Memo to Subcontractors dated 1-18-16) ("It is our goal to come up with a viable

4  system that makes it clear what our position is while we conduct our business *on*

5  *behalf of our clients*." (emphasis added)).

6         Plaintiffs argue that Defendants controlled their conditions of employment

7  because Defendants required Plaintiffs to "wear Defendants' approved uniform and

8  display Defendants' logo/livery on their vehicle[s]."ECF No. 93 at 7.  Defendants

9  demonstrate that while Plaintiffs were required to wear a uniform and display some

10 signage, the particulars of each were up to the individual Plaintiff pursuant to the

11 Agreements.  ECF No. 105 ¶ 15.[8]

12        Plaintiffs' claim that they lacked control over their schedule is again belied

13 by the unrebutted evidence in the record evidence.  Defendants demonstrate that,

14

15  ─────────────────

16 1344–45 (N.D. Ga. 2011) (defendant's ability to enforce rules imposed upon plaintiff

17 dancers was only one of six factors considered).

18 [8] Multiple Plaintiffs' declarations also stated that they were required to purchase and

19 wear Defendants' uniforms and display Defendants' signage/livery.  *See, e.g.*, ECF No.

20 93-2 at 2 ¶¶ 9–10.  However, Plaintiffs made no argument in their Reply to dispute

21 Defendants' contention that Plaintiffs were allowed to choose their own uniforms and

22 signage.  *See* ECF No. 105 ¶ 15.  Nor could they, the Agreements clearly state that

23 "[d]rivers must *be uniformed*" and "[t]rucks must . . . display[] *your* company name.

24 ECF No. 93-1, Ex. D at 132 ¶ 2 (emphasis added).  The plain reading of this clause

25 indicates that Plaintiffs were required to wear *a* uniform—though it is not specified

26 whether the uniform had to be purchased from or approved by Defendants—and that

27 Plaintiffs' trucks were required to display the individual *Plaintiff's* company name—not

28 Defendants'.

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT - 10

while they did require an ISP to keep them informed of their hours of operation,[9]

they did not control Plaintiffs' work schedules because Plaintiffs were able to set

their own schedules,[10] as well as the geographic area in which they offered

services. ECF No. 106 at 4. Defendants also demonstrate that they did not control

Plaintiffs' conditions of employment because Plaintiffs could expand their scope of

services: they could offer different services from other Plaintiffs based on their

individual preferences. ECF No. 105 ¶ 11. Defendants argue that Plaintiff Linz

declined to provide tire changes (a service other Plaintiffs offered), but did offer

tire patches (a service not offered by other Plaintiffs). Plaintiffs make a truly

baffling argument to contest this.[11] *Id.* In the end, as with the discussion of the

---

[9] *See* ECF No. 93-1, Exhibit D at 132 ¶ 1 ("ISP . . . shall inform CVRS of any change in its hours of operation").

[10] One email is particularly damaging to Plaintiffs' case. In that email, dated January 5, 2019, Plaintiff Linz not only sets his schedule for the week, but informs Defendants that the schedule he has submitted is "subject to change at any time." ECF No. 105-1 at 44.

[11] Plaintiffs argue that this assertion is somehow sufficiently rebutted by a previous declaration wherein Plaintiff Linz stated he was not allowed to provide services other than those offered by Defendants. ECF No. 108 at 6 n.2. Plaintiffs fail to explain how Plaintiff Linz's bare, unsupported, and self-serving declaration rebuts anything. Plaintiff Linz's statement (as well as several other Plaintiffs' similarly deficient statements, *see, e.g.*, ECF No. 93-2 at 2 ¶ 13) do nothing to rebut the Agreements signed by the parties, which state that "ISP agrees that it shall be solely responsible for collecting any fees from Members that are not covered by [Defendants] and that [Defendants] shall not have any obligation to pay for such non-covered Services . . . ." ECF No. 93-1, Ex. D at 132 ¶ 3. This language indicates that Plaintiffs were able to perform services beyond those offered by Defendants, but with the caveat that Defendants would not be liable for the collection of payment for such services.

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT - 11

1    prior factor, there is an Agreement, signed by the parties, which has not been

2    rebutted by Plaintiffs.

3         Plaintiffs argue that Plaintiff Linz only changed his schedule "twenty-one

4    [times] over the course of three years" and that this does not reflect that he did so

5    "frequently." ECF No. 108 at 3. However, the question is not how frequently

6    Plaintiff Linz changed his schedule, but rather whether Defendants supervised and

7    controlled Plaintiff Linz's schedule. Thus, the frequency at which Plaintiff Linz

8    changed his schedule has little bearing on the calculus here: the fact that he

9    changed his schedule at all is evidence that Defendants did not control it.

10        In the alternative, Plaintiffs argue that Defendants have only submitted

11   evidence regarding Plaintiff Linz's schedule while ignoring the rest of the

12   collective Plaintiffs' schedules, and that the Court should not allow such narrow

13   evidence to "sandbag Plaintiffs' counsel." ECF No. 108 at 4 n.1. However, if

14   Plaintiffs wished for this Court to consider other collective Plaintiffs' schedule

15   adjustments—or lack thereof—they should have attached them to either their

16   Motion or Reply.[12]

17        Accordingly, the Court finds that Defendants did not control Plaintiffs'

18   schedules for FLSA purposes. Furthermore, Plaintiffs' failure to dispute the

19   allegation that they could select their own signage and uniforms in their reply

20   admits the same. The Court therefore finds that there is no contested issue of

21   material fact as to whether Defendants controlled the Plaintiffs' conditions of

22   employment. Defendants are entitled to summary judgement as to this factor.

23   _____

24   [12] *See Carmen*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("even if an affidavit is on file, a

25   district court need not consider it in opposition to summary judgment unless it is

26   brought to the district court's attention in the opposition to summary judgment"); *see*

27   *also, Riverside*, 249 F.3d at 1137 ("a simultaneous cross-motion is another means to

28   bring to the district court's attention a controversy over the facts").

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT - 12

## C.    Whether Defendants Determined the Rate and Method of Pay

Plaintiffs argue that Defendants determined the rate of pay because "[t]he Agreements allow [Plaintiffs] to only receive rates set by [Defendants]" and that "failure to accept the new rates would result in termination of the Agreements." ECF No. 93 at 6.   Defendants counter that other ISPs negotiated different rates, and that this indicates that Plaintiffs were free to do so as well.  ECF No. 105 ¶ 9; ECF No.105-7, Exhibit G (two invoices showing billing by ISP Cd Logistics LLC and ISP Greg Simpson billing at $15 and $14 respectively).  Defendants further demonstrate, again with actual invoices, that Plaintiffs negotiated their rates of pay by seeking a "mileage reimbursement" for certain undesirable runs even though such reimbursement was "not based on any specific distance."  *Id*. ¶ 10; *see also* ECF No. 105-8, Exhibit H; ECF No. 105-9, Exhibit I.

Plaintiffs provided no response to Defendants' contention regarding mileage reimbursement and instead asserted that whether "two non-Collective members were able to negotiate higher rates of pay . . . is simply irrelevant to the issue at hand." ECF No. 108 at 5–6.  Plaintiffs make this assertion because "based off of common knowledge, different employees in companies throughout America are paid different rates depending on a myriad of factors."  *Id*.  Plaintiffs' assertion thus rests on the notion that Plaintiffs are employees,—the very issue that the Court's analysis here seeks to resolve.  The proposition that this Court should not look at other ISPs in making its determination as to whether Plaintiffs were employees thus suffers from the same notion.

Absent any evidence that these other ISPs were not similarly situated to Plaintiffs, the nature of the relationships between the other ISPs and Defendants is crucial in determining the economic reality of the relationships between Plaintiffs and Defendants.  Thus, the fact that other ISPs were able to negotiate different rates indicates that Defendants did not determine the rate of Plaintiffs' pay for

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 13

1    FLSA purposes.  This conclusion is only strengthened by Plaintiffs' failure to

2    dispute Defendants' allegations regarding mileage reimbursement.

3           Here as well, the Court finds that the ISPs rates of pay were in fact

4    negotiated by ISPs.  Defendants are entitled to summary judgement as to this

5    factor.

6                    **D.      Whether Defendants Maintained Employment Records**

7           Plaintiffs argue that Defendants maintained employment records because

8    they "maintain[ed] records relating to the Collective's completed jobs through their

9    rate schedules, executed Agreements, onboarding information, and payroll."  ECF

10   No. 93 at 6.  Defendants dispute this allegation, arguing that they "did not maintain

11   conventional employment records."  ECF No. 106 at 4.  Specifically, Defendants

12   contend that they did not maintain records for jobs performed by Plaintiffs and that

13   such records were maintained by a third-party vendor.  *Id*.

14          Plaintiffs rest their argument on the proposition that the Western District of

15   Washington "considers any records relating to employee performance to be

16   employment records."  ECF No. 93 at 6 (citing *Tumulty v. FedEx Ground Package*

17   *Sys., Inc.*, 2005 WL 8181225 at *4 (W.D. Wash. 2005).  Putting aside that the

18   Western District's ruling is not binding on this Court, *Tumulty* is nevertheless

19   inapplicable: in that case, the defendant had "maintained customer

20   complaint/satisfaction records for each Driver." 2005 WL 8181225 at *4.  This

21   differs sharply from the present case where Plaintiffs have not identified any

22   records relating to employee *performance*.

23          Plaintiffs' assertion that Defendants maintained rate schedules, executed

24   Agreements, onboarding information, and payroll is likewise unpersuasive.  The

25   rate schedules and executed Agreements do not establish an employer-employee

26   relationship: such records are kept as a matter of course in both employment and

27   independent contracting relationships.  As for onboarding information, the Court

28   ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
     JUDGMENT - 14

makes no finding. If Defendants had maintained onboarding information such as human resource materials or training manuals, then these materials would have been given to Plaintiffs. Since Plaintiffs have failed to produce any such evidence in their Motion or Reply, the Court assumes it has not been submitted and declines to investigate further. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ([a]s the Seventh Circuit in *Dunkel* stated aptly: "[j]udges are not like pigs, hunting for truffles buried in briefs" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). As to payroll, Plaintiffs have submitted no evidence that Defendants kept such records and "a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." *See id*. Accordingly, the Court finds that Defendants did not maintain employment records as contemplated by the FLSA. Defendants are entitled to summary judgement as to this fourth and final factor.

### E. Plaintiffs Were Not Employees Under FLSA

Based on the foregoing, the Court finds that applying the four-factor economic reality test, as set forth in *Bonnette*, can lead to only one conclusion: Plaintiffs were not employees under FLSA. Although the Court's analysis was somewhat hamstrung by the inadequacies of the parties' briefings, any evidence in favor of Plaintiffs is insufficient to change the ultimate outcome. *See Orquiza v. Bello*, 634 F. App'x 605, 605 (9th Cir. 2016) (affirming the district court's determination that the defendant was not an employer, despite finding that the "district court's analysis of" the defendant's power to hire and fire plaintiffs was "inapt"); *see also Montoya v. 3PD, Inc.*, No. CV-13-8068-PCT-SMM, 2014 WL 3385116, at *3–5 (D. Ariz. July 10, 2014) (finding summary judgment in favor of defendants when the record contradicted plaintiff's assertions) *appeal dismissed*, 9th Cir. Case #14-16805 (Aug 10, 2015). Defendants are entitled to summary judgement as to this claim.

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 15

## II.    Damages

Both parties submitted briefing on the issue of damages.  Specifically, both parties submitted briefing on how the Court should calculate the amount of time for which Plaintiffs should be compensated.

Plaintiffs contend that they should be compensated for the time between their first and last call each day in accordance with the "continuous workday rule." ECF No. 93 at 10 (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005).  In the alternative, Plaintiffs contend that they should be compensated for their spent driving from service call to service call.  *Id*. at 11 (citing *United Transp. Union Loc. 1745 v. City of Albuquerque*, 178 F.3d 1109, 1119 (10th Cir. 1999).  Defendants, however, urge the Court to instead determine when Plaintiffs were "engaged to wait" or "waiting to be engaged" in order to calculate how many hours Plaintiffs should be compensated for.  ECF No. 5–6 (citing *Berry v. Cnty. of Sonoma*, 30 F.3d 1174, 1180 (9th Cir. 1994).

However, having determined that Plaintiffs were not employees for FLSA purposes, the Court need not make a finding as to which portions of Plaintiffs' time were compensable.[13]

## III.    State Court Claims and Supplemental Jurisdiction

Having determined that Defendants are entitled to summary judgment on Plaintiffs' federal claims, Plaintiffs' only remaining claims are claims under State law.  This Court had supplemental jurisdiction over these claims, pendant to Plaintiffs' claims under § 1983.  *See* 28 U.S.C. § 1367(a).  However, if "the district court has dismissed all claims over which it has original jurisdiction," the Court may decline to exercise supplemental jurisdiction over the remaining state law

---

[13] *See Bonnette*, 704 F.2d at 1468 ("[i]n order for the minimum wage provisions of the FLSA to apply . . . [plaintiffs] must be "employers" . . . within the meaning of the FLSA").

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 16

1    claims.  28 U.S.C. § 1367(c); *see Union Mine Workers of Am. v. Gibbs*, 383 U.S.

2    715, 726 (1966); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir.

3    1997) ("Certainly, if the federal claims are dismissed before trial, even though not

4    insubstantial in a jurisdictional sense, the state claims should be dismissed as

5    well.").

6          Given that the Court has resolved all federal claims giving rise to this

7    Court's original jurisdiction in favor of Defendant, the Court declines to exercise

8    supplemental jurisdiction over Plaintiffs' remaining state law claims.  *See Ove v.*

9    *Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise

10   supplemental jurisdiction over related state-law claims once it has dismissed all

11   claims over which it has original jurisdiction.").  Therefore, the Court dismisses

12   Plaintiffs' state law claims without prejudice for lack of jurisdiction.  The state

13   courts are still available to Plaintiffs to pursue their state law claims.

                                    **CONCLUSION**

15         Based on the foregoing, **IT IS HEREBY ORDERED:**

16         1.    Plaintiffs' Motion for Summary Judgment (**ECF No. 93**) is **DENIED.**

17         2.    Defendants' Cross-motion for Summary Judgment (**ECF No. 106**) is

18   **GRANTED**.

19         3.    **Plaintiffs' Fair Labor Standard Act claims against Defendants are**

20   **DISMISSED WITH PREJUDICE.**

21         4.    **The Court declines to exercise its supplemental jurisdiction;**

22   **consequently, Plaintiffs' state law claims are DISMISSED WITHOUT**

23   **PREJUDICE for lack of jurisdiction.**

24         5.    All pending motions are **DENIED AS MOOT**.[14]

25

26

27   ───────────────────
     [14] Specifically, the Court is aware of a pending Motion to Appear and Testify Via
28   Electronic Means (ECF No. 133).

     ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
     JUDGMENT - 17

1    **IT IS SO ORDERED**.  The District Court Executive is directed to file this

2    Order and provide copies to counsel.  **Judgment shall be entered for Defendants**

3    and the file shall be **CLOSED**.

4         DATED December 22, 2022.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT - 18